# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00448-CV

**Good Shepherd Medical Center, Inc., Appellant**

**v.**

**The State of Texas; Teacher Retirement System of Texas; and Ronnie G. Jung,
in his capacity as Executive Director of the Teacher Retirement System of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-03-003352, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## O P I N I O N

Good Shepherd Medical Center, Inc. (Good Shepherd) appeals a district court judgment dismissing, for lack of standing, its declaratory claims challenging the constitutionality of two statutes. The judgment also addressed the merits—it held that Good Shepherd take nothing on its claims and granted two intervenors affirmative declarations that the statutes were constitutional. In three issues, Good Shepherd contends that the district court erred in holding that it lacked standing, in proceeding to reach the merits after holding that Good Shepherd lacked standing, and in rejecting Good Shepherd's constitutional challenges and declaring the statutes to be constitutional. We will affirm the district court's judgment that Good Shepherd failed to demonstrate its standing. However, because we conclude this ruling deprived the district court of subject-matter jurisdiction to reach the merits of either Good Shepherd's or the intervenors' claims, we must modify the

district court's judgment to delete the portions adjudicating those issues and instead dismiss the claims for want of subject-matter jurisdiction.

## BACKGROUND

At relevant times, the statutory charges of appellee Teacher Retirement System of Texas (TRS) have included the provision of statewide health care benefit programs for both active and retired employees of Texas school districts. The benefit program for school-district retirees is known as "TRS-Care," while the program for active employees is known as "TRS-ActiveCare." At relevant times, both programs have delivered services through what is known as a "preferred provider organization" or "PPO" model, in which plan members are required or incentivized to use a "network" of health care providers that have contracted to provide services to plan members under reduced rates or other favorable terms. In exchange for agreeing to such terms, these "in-network" health care providers obtain a competitive advantage over any "out-of-network" rivals in that plan members are "steered" to "in-network" providers by the plan's restrictions or incentives.

Beginning in 1993, TRS had contracted directly with health care providers to serve as the network for TRS-Care members. With TRS-ActiveCare, however, TRS contracted with Blue Cross Blue Shield of Texas (BCBSTX) to serve as the statewide third-party administrator. BCBSTX, in turn, utilized a preexisting PPO network of physicians and hospitals to serve as its network for TRS-ActiveCare members.

Effective September 1, 2003, the 78th Texas Legislature imposed the following limitations on TRS's powers to contract with health care providers or third-party administrators to provide health care benefits to TRS-Care members:

2

The Teacher Retirement System of Texas, as trustee, may not contract for or provide a health benefit plan that excludes from participation in the network a general hospital that:

(1)     is located within the geographical service area or areas of the health coverage plan that includes a county that:

(A)     has a population of at least 100,000 and not more than 175,000; and

(B)     is located in the Texas-Louisiana border region, as that term is defined in Section 2056.002(e), Government Code;

and,

(2)     agrees to provide medical and health care services under the plan subject to the same terms and conditions as other hospital providers under the plan.

Act of June 2, 2003, 78th Leg., R.S., ch. 201, § 50, sec. 1575.163, 2003 Tex. Gen. Laws 812, 827, *codified at* Tex. Ins. Code Ann. § 1575.163 (West 2009). In the same bill, the legislature enacted a virtually identical limitation on TRS's powers to contract with regard to the TRS-ActiveCare program. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 201, § 56, art. 3.50-7A, 2003 Tex. Gen. Laws 812, 828, *previously codified at* Texas Ins. Code Ann. art. 3.50-7A, *repealed by* Act of May 17, 2007, 80th Leg., R.S., ch. 730, § 1G.003, sec. 1579.108, 2007 Tex. Gen. Laws, 1356, 1375-76, *codified at* Tex. Ins. Code Ann. § 1579.108 (West 2009) (referring to "health coverage plan" rather than "health benefit plan" and omitting "and conditions") (collectively, the "2003 amendments"). Simply described, the 2003 amendments meant that TRS was required to provide (or contract to provide) a health care plan serving TRS-Care or TRS-ActiveCare members that made "in-network" status available to any "general hospital" in the defined geographic area that agreed to the "same terms and conditions as other hospital providers under the plan." This type of arrangement, termed an "any willing provider" regime, stands in contrast to one in which the plan administrator is free

3

to contract selectively with health care providers and/or consider criteria other than the provider's agreement to agree to predetermined terms, conditions, or rates in deciding whether to allow a provider into the network.

Appellant Good Shepherd owns and operates a hospital in Longview, Gregg County, Texas. Appellee Longview Medical Center, L.P. d/b/a Longview Regional Medical Center (Longview Regional) owns a smaller hospital in Longview and is Good Shepherd's chief competitor. Appellee East Texas Medical Center (ETMC) owns and operates a hospital in Tyler, Smith County, Texas. There is no dispute that at relevant times, each of these hospitals was a "general hospital" within the meaning of the 2003 amendments and that each hospital's location was within the amendments' geographic and population brackets. There is also no dispute that Gregg and Smith counties were the only counties in the state at the time that fell within the 2003 amendments' geographic and population brackets.

Prior to the enactment of the 2003 amendments, it is undisputed that both Good Shepherd and Longview Regional were in TRS's network of providers that served TRS-Care members. However, beginning in 1995 and until the 2003 amendments, Good Shepherd had been the sole general hospital in Longview with in-network status under the BCBSTX PPO that served TRS-ActiveCare members. A BCBSTX representative, Darren Rodgers, testified that BCBSTX had chosen to allow Good Shepherd and not Longview Regional into its network based on considerations of customer preferences, access needs in the area, and pricing. There was also evidence that Good Shepherd had a history of using its leverage as the largest general hospital in Longview to dissuade other health plans from allowing Longview Regional into their networks,

4

including threatening to withdraw from the networks unless the plans agreed to increase the hospital's reimbursement rates.

After the 2003 amendments were enacted, BCBSTX, in an attempt to comply with the new requirements, allowed Longview Regional into its network alongside Good Shepherd. As for TRS-Care, Good Shepherd demanded sole-provider status from Aetna, which took over administration of the plan from TRS effective September 1, 2003. Aetna refused to grant Good Shepherd sole-provider status. In response, Good Shepherd withdrew from the network, but ultimately reentered the network in January 2006.

Good Shepherd, joined by a general hospital located in Tyler that competes with ETMC, Mother Frances Hospital Regional Health Care Center (Mother Frances), filed a declaratory-judgment action[1] against the State of Texas, TRS, and TRS's executive director in his official capacity, seeking a declaration that the 2003 amendments (i.e., Tex. Ins. Code Ann. § 1575.163 and Tex. Ins. Code Ann. § 1579.108) were unconstitutional local or special laws, *see* Tex. Const. art. III, § 56, injunctive relief against their enforcement, and attorney's fees.[2] Longview Regional, joined by ETMC (hereinafter, the Intervenors), intervened seeking declarations under the UDJA that the statutes were not unconstitutional local and special laws and also seeking attorney's fees. Mother Frances subsequently non-suited its claims, leaving Good Shepherd as the sole plaintiff.

---

[1] *See* Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

[2] *See id.* § 37.009.

5

After discovery, the Intervenors filed a joint plea to the jurisdiction challenging whether Good Shepherd had standing to assert its action. The case eventually was tried to the district court. By agreement, trial consisted of a single day of argument with an agreed submission of deposition testimony and documentary exhibits. The district court first heard argument on the Intervenors' plea to the jurisdiction, then took the plea under advisement and proceeded to hear argument on the merits. Following trial, the district court granted the Intervenors' plea to the jurisdiction and also held that the 2003 amendments were constitutional. After a subsequent bench trial on the Intervenors' request for attorney's fees, the district court rendered a final judgment incorporating its ruling granting the Intervenors' plea to the jurisdiction, granting the Intervenors a declaration that "each of the two Texas statutes placed at issue by the parties' respective pleadings in this action is constitutional, valid, and enforceable in all respects," ordering that Good Shepherd take nothing on its suit, and awarding Longview Regional $75,000 and ETMC $200,000 in attorney's fees under the UDJA. The district court subsequently entered findings of fact and conclusions of law. This appeal followed.

**ANALYSIS**

Good Shepherd brings three issues on appeal. First, it contends that the district court erred in granting the Intervenors' plea to the jurisdiction because it had demonstrated its standing to assert its claims. Good Shepherd also states a second issue, which it does not brief or argue: "If the trial court did not have jurisdiction over Appellants' Claim, then the Trial Court erred in reaching the merits." In its third issue, Good Shepherd contends that the district court erred in declaring that the 2003 amendments were not unconstitutional local or special laws and in denying its claims for

6

a declaration that they were. Good Shepherd does not challenge Intervenors' attorney's fee award.

In addition to responding to Good Shepherd's appellate contentions, Intervenors request that we sanction Good Shepherd for filing a frivolous appeal and award them attorney's fees incurred in defending this appeal. *See* Tex. R. App. P. 45.

**Standing**

A plea to the jurisdiction challenges a trial court's authority to decide a case. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

When resolving issues presented by the plea to the jurisdiction, we may consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in

7

the pleadings. *Miranda*, 133 S.W.3d at 227. To the extent the challenge implicates the merits of the plaintiff's cause of action, the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, in a manner similar to a traditional summary-judgment motion. *See id.* at 227-28. Whether the party meets this burden is a question of law that we review de novo. *Id.* at 228. If the pleading requirement has been met and the party challenging jurisdiction submits evidence that implicates the merits of the pleader's cause of action, we take as true all evidence favorable to the pleader and indulge every reasonable inference and resolve any doubts in the pleader's favor. *Id.* To the extent the challenge to a jurisdictional fact does not implicate the merits of the pleader's cause of action, the trial court must make the necessary fact findings to resolve the jurisdictional issue. *University of Texas v. Poindexter*, ___ S.W.3d ___, No. 03-04-00806-CV, 2009 Tex. App. LEXIS 5112, at *9-10 (Tex. App.—Austin July 3, 2009, no pet.). These underlying fact findings, like others, may be challenged for legal and factual sufficiency. *Id.* at *10. The trial court's jurisdictional determination based on the found facts (to the extent they are unchallenged or, if challenged, are supported by sufficient evidence) is a question of law that we review de novo. *Id.* at *14 (reviewing trial court's decision de novo when relevant jurisdictional facts were unrelated to merits and undisputed); *see also F/R Cattle Co. v. State*, 866 S.W.2d 200, 201 (Tex. 1993) (remanding case to appellate court for factual-sufficiency review of evidence considered by trial court to determine whether evidence supported trial court's dismissal of case).

The Intervenors' plea to the jurisdiction asserted, and the district court held, that Good Shepherd had failed to demonstrate that it possessed the constitutional prerequisite of standing

8

necessary for the district court to have subject-matter jurisdiction to adjudicate the merits of its cause of action. *See Texas Ass'n of Bus.*, 852 S.W.2d at 443-45 ("[W]e conclude that standing is a component of subject matter jurisdiction . . . .").[3] The general test for constitutional standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be determined by the judicial declaration sought. *See id.* at 446. Constitutional standing is thus concerned not only with whether a justiciable controversy exists, but whether the particular plaintiff has a sufficient personal stake in the controversy to assure the presence of an actual controversy that the judicial declaration sought would resolve. *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). The requirement thereby serves to safeguard the separation of powers by ensuring that the judiciary does not encroach upon the executive branch by rendering advisory opinions, decisions on abstract questions of law that do not bind the parties. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444.

Good Shepherd's suit presents a facial constitutional challenge to the 2003 amendments—it asserts that the amended statutes violate article III, section 56 of the Texas Constitution because they are prohibited local or special laws, a flaw that would exist in all of the statutes' applications. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995). By definition, Good Shepherd is contending that the amended statutes operate unconstitutionally as to it. *Id.* The Texas Supreme Court has indicated that for a plaintiff

---

[3] *Cf. Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 n.16 (Tex. 2008) (observing that federal standing doctrine has both jurisdictional and prudential components and that "[t]his Court has not indicated whether standing is always a matter of subject-matter jurisdiction").

to have standing to challenge a statute as unconstitutional, he (1) "must suffer some actual or threatened injury under the statute" and (2) "must contend that the statute unconstitutionally restricts the plaintiff's own rights," not someone else's. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex. 1996) (citing *Garcia*, 893 S.W.2d at 518). The United States Supreme Court, applying standing principles that are analogous to Texas standing jurisprudence at least with respect to challenges to governmental action, has further explained that the "irreducible constitutional minimum" of standing consists of three elements:

(1)  "the plaintiff must have suffered an 'injury in fact'—an invasion of a 'legally protected' [or cognizable] interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'";

(2)  "there must be a causal connection between the injury and the conduct complained of"—the injury must be "fairly traceable" to the challenged action of the defendant and not the independent action of a third party not before the court; and

(3)  it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("[W]e may look to the similar federal standing requirements for guidance."); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, No. 03-04-00683-CV, ___ S.W.3d ___, 2010 Tex. App. LEXIS 1025, at *9-10 (Tex. App.—Austin Feb. 11, 2010, no pet. h.) (applying these requirements in suit challenging governmental action).[4]

---

[4] *See also* William V. Dorsaneo, *The Enigma of Standing Doctrine in Texas Courts*, 28 Tex. Rev. Litig. 35, 42-58 (2008) (observing that Texas courts have sometimes equated "standing" to bring a common-law or statutory claim with the existence of a *legal* injury while applying standing

"Injury-in-fact," the cornerstone of these requirements, is conceptually distinct from the question of whether the plaintiff has incurred a *legal* injury—i.e., whether the plaintiff has a viable cause of action on the merits. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).[5] Similarly, the required infringement of a "legally protected interest" does not necessarily have to rise to the level of depriving the plaintiff of a "vested right" so as to violate due process. *See Coastal Habitat Alliance v. Public Util. Comm'n*, 294 S.W.3d 276, 287 (Tex. App.—Austin 2009, no pet.) ("Whether a plaintiff has standing in federal courts to assert a cause of action is not indicative of the deprivation of a vested property right."). Nonetheless, it remains that a plaintiff must show that it has or imminently will suffer an invasion of some "legally protected" interest that is sufficiently unique to the plaintiff, as distinguished from the general public, to ensure that the plaintiff has a sufficient personal stake in the controversy so that the lawsuit would not yield a mere advisory opinion or draw the judiciary into generalized policy disputes that are the province of the other branches. *Save Our Springs Alliance, Inc.*, ___ S.W.3d ___, 2010 Tex. App. LEXIS 1025, at *8-24 (applying this requirement to hold that association members, who claimed environmental, scientific, and recreational interests in Barton Springs, but no property interests affected by alleged pollution, had not established injury distinct from that of general public); *see also Lujan*, 504 U.S. at 559-60, 576-78 (discussing role of standing in preventing judicial incursions into legislative and executive spheres).

---

principles in public rights cases that resemble the injury-in-fact test applied by federal courts).

[5] *See also* Dorsaneo, *supra* note 4, at 44-45.

11

Good Shepherd's live pleading allegations relevant to its standing are the following:

15. TRS contracted with Blue Cross Blue Shield of Texas ("BCBSTX") for the provision of health care services to members of its health care benefit plan.

16. Good Shepherd entered into a contract with BCBSTX in which Good Shepherd was to be the preferred tertiary acute care center providing full hospital services in the BCBSTX provider network for the TRS health benefit plan in Gregg County. Prior to September 1, 2003, and since 1995, Good Shepherd was the preferred tertiary acute care, full service hospital provider in Gregg County for the BCBSTX Blue Choice Plan.

17. The "any willing provider" language in Section 1573.163 and [Section 1579.108] of the Texas Insurance Code eliminated the sole provider relationship that Good Shepherd had with BCBSTX in connection with the TRS health benefit plan. As of September 1, 2003, the effective date of the new legislation, BCBSTX opened its provider network and has since contracted with Longview Regional Medical Center, another general hospital in Gregg County. These provider contracts were entered into pursuant to Section 1575.163 and [Section 1579.108] of the Texas Insurance Code. Consequently, Good Shepherd is no longer the sole preferred tertiary acute care, full service hospital provider in Gregg County for the BCBSTX Blue Choice Plan.

Liberally construing these pleadings, Good Shepherd alleges two types of injury from the 2003 amendments. First, it pleads that it had "entered into a contract with BCBSTX in which Good Shepherd was to be the preferred tertiary acute care center providing full hospital services in the BCBSTX provider network for the TRS health benefit plan in Gregg County" and that the 2003 amendments had "eliminated" that contractual relationship. Second, Good Shepherd alleges that it was the de facto sole "preferred tertiary acute care, full service hospital provider in Gregg County for the BCBSTX Blue Choice Plan" and that the 2003 amendments had "eliminated" its sole-provider status by causing BCBSTX to contract with Longview Regional.

12

In challenging Good Shepherd's standing, Intervenors have advanced three basic contentions. They first point out that Good Shepherd's alleged injury or injuries derive solely from the impact of the 2003 amendments on the actions of BCBSTX. Intervenors presented undisputed evidence that BCBSTX is the third-party administrator for TRS-ActiveCare, not TRS-Care, which has been administered at relevant times by TRS or Aetna. Consequently, as Intervenors urge, Good Shepherd's pleadings, by referencing only BCBSTX, purport to allege injury deriving only from the 2003 amendments impacting TRS-ActiveCare (Tex. Ins. Code Ann. § 1579.108), not those affecting TRS-Care (Tex. Ins. Code Ann. § 1575.163). Good Shepherd does not appear to dispute that its pleadings complain only of the 2003 amendments impacting TRS-ActiveCare.

Second, Intervenors have argued that Good Shepherd failed to plead—and cannot prove—that enforcement of the 2003 amendments had infringed or would imminently infringe upon any legally protected interest Good Shepherd possessed. They have focused on whether Good Shepherd had alleged it had any contractual right to be or remain BCBSTX's "sole . . . hospital provider." Intervenors also presented evidence that Good Shepherd's contracts with BCBSTX during the relevant time period did not contain any provision prohibiting BCBSTX from allowing other Gregg County hospital providers into its network.[6] They demonstrated that, in fact, Good Shepherd's contract with BCBSTX at the time of the 2003 amendments expressly contemplated that BCBSTX could contract with other hospital providers during the contract term:

---

[6] Intervenors similarly argued that the evidence demonstrated Good Shepherd had never been a sole hospital provider in Gregg County with respect to TRS-Care and never had a contractual right to be.

13

> [BCBSTX] agrees that if it becomes necessary to add facilities to the PPO/POS network in Longview, Texas, either to meet capacity needs or employer requests, BCBSTX will give [Good Shepherd] written notice prior to adding the facilities. Upon receipt of the written notice from BCBSTX, the parties agree that price negotiations for services furnished by [Good Shepherd] will begin between [Good Shepherd] and BCBSTX and will be completed within one hundred eighty (180) days of receipt of such notice by [Good Shepherd].

And Good Shepherd's right to renegotiate its prices was not a legally protected interest that could give rise to standing, Intervenors add, because it was an unenforceable agreement-to-agree. *See Meru v. Huerta*, 136 S.W.3d 383, 391 (Tex. App.—Corpus Christi 2004, no pet.).

Based on this evidence, the district court found:

9. The Plaintiff in this action, [Good Shepherd], does not now have, nor has Good Shepherd at any time relevant to this action ever had, any agreement with any governmental entity, nongovernmental entity, or other person stating that Good Shepherd shall be the sole or exclusive in-network provider with respect to either the TRS-Care plan or the TRS-ActiveCare plan.

Good Shepherd does not challenge the sufficiency of the evidence supporting this finding. Instead, it has focused solely on the second type of injury it has pled, the elimination of its de facto (as opposed to a contractual) sole-provider relationship with BCBSTX. As to this asserted injury, Good Shepherd has contended that the existence or non-existence of an enforceable contractual right for it to be or remain BCBSTX's sole hospital provider in Gregg County is irrelevant. What matters, in Good Shepherd's view, is that the 2003 amendments have changed and limited the manner in which it can compete with Longview Regional in the local market for TRS-ActiveCare patients, and it is these limitations that have caused it to lose its de facto sole-provider status.

14

Prior to the 2003 amendments, Good Shepherd argues, it could bargain with BCBSTX to remain the sole Gregg County hospital provider in its network—which, it is undisputed, it did successfully until the 2003 amendments. In this regard, Good Shepherd emphasizes Darren Rodgers's testimony that BCBSTX had opted to allow Good Shepherd and not Longview Regional into its network based on considerations of customer preferences, access needs in the area, and pricing, and that Rodgers indicated this sole-provider arrangement "probably" would have continued absent the amendments. In contrast, following the amendments, Good Shepherd complains, BCBSTX is effectively required (if it wants to serve as TRS's third-party administrator for ActiveCare) to allow Good Shepherd's competition into its network, regardless of any considerations that would otherwise have dissuaded BCBSTX from doing so, so long as the competition agrees to the same terms and conditions Good Shepherd has negotiated with BCBSTX. In this respect, Good Shepherd urges, the 2003 amendments deprived it of "a legal right to enter into a sole preferred in-network provider contract, if it so chose, and now . . . neither Good Shepherd nor BCBSTX is legally able to do that."

We express no opinion as to whether the sorts of facts that Good Shepherd argues would demonstrate an economic injury that would confer standing[7] because it did not plead any

---

[7] We observe that, in the analogous context of government procurement, the Texas Supreme Court and this Court have held that businesses that are adversely affected by changes in bidders' requirements relative to their competitors may have standing to challenge those requirements. *See Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 526, 530-31 (Tex. 1963) (owners of imported foreign steel "clearly have the right and litigable interest" to challenge, as contrary to statute, agency order requiring state highway contractors to use only domestic steel); *Texas Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied) (out-of-state vendors had economic injury, distinct from general public, conferring standing to challenge lottery commission action to give favorable consideration to bidders' anticipated economic impact on the state when awarding certain contracts;

of them. Instead, it alleged only that the 2003 amendments in themselves "eliminated" its de facto sole-provider relationship with BCBSTX. As the district court observed while hearing evidence on Intervenors' plea, the 2003 amendments in themselves did not eliminate or prohibit a de facto sole-provider relationship—even in an "any willing provider" regime, there may be only one provider willing to agree to the plan's specified terms and conditions. Nor can we construe Good Shepherd's allegation that the 2003 amendments "eliminated" its de facto sole-provider relationship to allege the specific facts regarding competitive injury it argues. To demonstrate its standing and invoke the district court's jurisdiction, Good Shepherd had the burden of alleging *facts* that affirmatively demonstrated the district court's jurisdiction, not bare conclusions. *See Miranda*, 133 S.W.3d at 226. Consequently, Good Shepherd failed to allege a deprivation of a legally protected interest than can confer standing.

Relatedly, in their third principal challenge to Good Shepherd's standing, Intervenors disputed whether Good Shepherd met its burden to plead or prove that its alleged injury (the loss or elimination of its status as BCBSTX's de facto sole preferred hospital provider in Gregg County) would be redressed by the remedy it seeks, invalidation of the 2003 amendments. Standing, again, requires pleadings (and, ultimately, proof) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *See Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). Furthermore, the U.S. Supreme

---

observing that rival in-state vendor would "unquestionably benefit" from the action); *see also Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) ("It is well settled that a provider of goods or services has standing to challenge government regulations that directly affect its customers and restrict its market.") (citing cases).

Court has emphasized that where, as here, the "plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*" other than the plaintiff (in this case, TRS, which in turn impacted BCBSTX, which in turn impacted Good Shepherd), "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (citations omitted). In such cases, "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict,' and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Id.* (citations omitted).

Given that BCBSTX had already allowed Longview Regional into its network, Intervenors have urged, it is merely speculative, if not doubtful, that BCBSTX would return to a de facto sole-provider relationship with Good Shepherd if the 2003 amendments are struck down. Good Shepherd's pleadings are simply silent as to the redressability of that alleged injury. Also, while Good Shepherd does not squarely challenge the sufficiency of the evidence supporting the district court's legal conclusion that it failed to demonstrate standing, we observe that the evidence was sufficient to support a district court finding that Good Shepherd had not met its burden to prove redressability as to this injury.

We conclude that the district court did not err in granting Intervenors' plea to the jurisdiction. Although we ordinarily afford the pleader the opportunity to replead when the pleadings omit facts that affirmatively demonstrate the district court's jurisdiction but do not affirmatively

17

demonstrate incurable defects in jurisdiction, *see Miranda*, 133 S.W.3d at 226-27, in this case the district court—at Good Shepherd's request—proceeded to trial on the merits on those pleadings. It is now too late for Good Shepherd to amend its pleadings to cure any jurisdictional defects. We overrule Good Shepherd's first issue.

**Merits**

In the "Issues Presented" section of its brief, Good Shepherd states, as its second issue, "If the Trial Court did not have jurisdiction over Appellants' Claim, then the Trial Court erred in reaching the merits." However, Good Shepherd does not again mention this contention in its brief, much less present any argument or authorities in support of it. Intervenors urge that Good Shepherd has waived its second issue. We agree. *See* Tex. R. App. P. 38.1(i).

Nonetheless, subject-matter jurisdiction cannot be waived or conferred by agreement, and we have a duty to consider a question of subject-matter jurisdiction sua sponte because the district court's power to decide the merits, as well as our own, rests upon it. *See Texas Ass'n of Bus.*, 852 S.W.2d at 443-46. The consequence of Good Shepherd's failure to demonstrate its standing is that the district court lacked subject-matter jurisdiction to adjudicate its claims. *See id.* at 444-46.

Intervenors insist that they independently invoked the district court's subject-matter jurisdiction to declare the constitutionality of the 2003 amendments by asserting their own declaratory-judgment claims in their petitions in intervention. However, Intervenors have not pled or demonstrated the existence of a ripe, justiciable controversy concerning the constitutionality of the 2003 amendments other than that presented by Good Shepherd's suit. Intervenors alleged (and presented proof) that Good Shepherd and Mother Frances had been successful in persuading

18

BCBSTX to exclude them from its network before the 2003 amendments were enacted, that the 2003 amendments had effectively compelled BCBSTX to open its network to them despite Good Shepherd and Mother Frances's opposition, and that BCBSTX had entered into a network contract with each of them following the 2003 amendments. Intervenors pled that they had justiciable interests in the litigation and were entitled to a declaration as to the "status" of their contracts in the face of Good Shepherd's suit to invalidate the 2003 amendments. The district court concluded that "[t]he trial evidence has established that [Intervenors] ha[ve] a justiciable interest in defeating the relief sought by Good Shepherd in this action and that [Intervenors] ha[ve] standing to maintain the claims [they] assert[] . . . in this action." However, Intervenors did not allege or prove the existence of a justiciable controversy concerning the constitutionality of the 2003 amendments apart from that presented by Good Shepherd's suit. Furthermore, Intervenors obtained declaratory relief that is simply the converse of the relief Good Shepherd sought—a declaration that the 2003 amendments were constitutional instead of a declaration that they were not. Consequently, as with Good Shepherd's claims, the district court lacked subject-matter jurisdiction to adjudicate Intervenors' claims.

We are not criticizing the district court's decision—with the parties' consent—to adjudicate the merits after having held that Good Shepherd lacked standing. Indeed, we have approved of this practice in a case where we reversed a trial court's dismissal for want of jurisdiction, held the court had jurisdiction, and then reviewed its alternative rulings on the merits. *See Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*, 131 S.W.3d 271, 280 (Tex. App.—Austin 2004, no pet.). This case, however, presents the converse situation—we have

19

affirmed a trial court's judgment dismissing claims for want of subject-matter jurisdiction and are confronted with a judgment on the merits that we have determined the court had no subject-matter jurisdiction to render. In such an instance, we must vacate the portions of the judgment that addressed the merits of the parties' claims. *See Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999). Specifically, we vacate the portions of the district court's judgment declaring that the 2003 amendments are "constitutional, valid, and enforceable in all respects"and dismiss Intervenors' claims, and modify the portion holding that "Good Shepherd take nothing by its suit" to hold that "Good Shepherd's suit is dismissed with prejudice." *See State v. Langley*, 232 S.W.3d 363, 369 (Tex. App.—Tyler 2007, no pet.) ("Generally, the proper remedy when a court lacks subject-matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper."). In light of these holdings, we do not (and cannot) reach Good Shepherd's third issue, which challenges the district court's rulings on the constitutional issues.[8]

**Sanctions**

Intervenors have moved for sanctions under Tex. R. App. P. 45, complaining that Good Shepherd has filed a frivolous appeal. While Good Shepherd did fail to brief one of its issues, we conclude that Good Shepherd has demonstrated cognizable legal and factual bases for its other two issues. We overrule Intervenors' motion for sanctions.

---

[8] We observe, however, that Good Shepherd has not challenged Intervenors' attorney's fee award and that our holdings would not control whether Intervenors would be entitled to recover attorney's fees in connection with defending Good Shepherd's UDJA claim.

20

## CONCLUSION

We affirm the district court's judgment granting Intervenors' plea to the jurisdiction and dismissing Good Shepherd's claims for want of subject-matter jurisdiction. We vacate the portion of the district court's judgment declaring that the 2003 amendments are "constitutional, valid, and enforceable in all respects," dismiss Intervenors' claims, and modify the portion of the judgment holding that "Good Shepherd take nothing by its suit" to hold that "Good Shepherd's suit is dismissed with prejudice."

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed in part; Modified and, as Modified, Affirmed in part; Vacated in part

Filed: February 18, 2010

21