# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00338-CV

**Mike Morath, Commissioner of Education; The Texas Education Agency; and The Texas State Board of Education, Appellants**

**v.**

**La Feria ISD; Joaquin ISD; and The Equity Center, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-17-001385, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Education Agency (TEA), the Texas Board of Education, and the Commissioner of Education (collectively, the State) appeal the district court's order overruling their plea to the jurisdiction and enjoining a challenged rule. Because Plaintiffs lack standing to contest the rule, we reverse the order overruling the plea to the jurisdiction, vacate the injunction, and dismiss the cause.

## BACKGROUND

The Foundation School Program (FSP) is a statewide fund established by the Legislature "to guarantee that each [school] district has 'adequate resources to provide each eligible student a basic instructional program and facilities suitable to the student's educational needs.'" *Morath v. The Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 836 (Tex. 2016) (quoting

Tex. Educ. Code § 42.002(a)(1)).  FSP derives its funding from several sources, including revenue

"recaptured" from school districts with higher property values.  *See* Tex. Educ. Code §§ 41.003

(requiring districts exceeding "acceptable wealth level" to take action to reduce per-student wealth),

41.151(b) (outlining FSP's financing).  Because school districts receive most of their revenue from

local property taxes, the Legislature defines each district's wealth in terms of the taxable property

in that district.  *See id.* § 41.001(2) (defining per-student wealth as "the taxable value of property . . .

divided by the number of students . . . ").

To facilitate the redistribution of tax revenue among the districts, the Legislature

requires the Comptroller to calculate the taxable value of all property in each school district and then

to certify those values to the Commissioner of Education.  *See* Tex. Gov't Code § 403.302.  The

Commissioner uses those values, along with enrollment data and formulas set forth in chapter 41 of

the Education Code, to determine which districts will be subject to revenue recapture for the

academic year.  TEA then notifies each of these districts of its financial obligation and its options

for fulfilling that obligation.  *See* 19 Tex. Admin. Code § 62.1071, sec. 2 (2018) ("Administrative

Procedures").  Because these obligations are established in chapter 41, these districts are colloquially

known as "chapter 41 districts," while districts that receive recaptured funds are sometimes referred

to as "chapter 42 districts."

In 2017, the Commissioner concluded that certain homestead exemptions were not

being correctly factored into the wealth calculation used to determine recapture obligations.

Homestead exemptions are governed by section 11.13 of the Tax Code, which delineates several

classes of exemptions.  Two are relevant here.  Subsection 11.13(b) mandates a $25,000 exemption

2

from the appraised value of the homestead. Subsection 11.13(n) allows—but does not require—local taxing authorities to provide an additional homestead exemption of up to 20% of the appraised value of the property. Beginning in 1999, the Comptroller had permitted use of the 11.13(n) option exemption subject to the condition set forth in Section 42.2522 of the Education Code, which provides:

> In any school year, ***the commissioner may not provide funding under this chapter*** based on a school district's taxable value of property computed in accordance with Section 403.302(d)(2), Government Code, ***unless***:
>
> (1) funds are specifically appropriated for purposes of this section; or
>
> (2) ***the commissioner determines that the total amount of state funds appropriated*** for purposes of the Foundation School Program for the school year ***exceeds the amount of state funds distributed*** to school districts in accordance with Section 42.253 based on the taxable values of property in school districts computed in accordance with Section 403.302(d), Government Code, ***without any deduction for residence homestead exemptions granted under Section 11.13(n), Tax Code***.

Tex. Educ. Code § 42.2522(a) (emphases added). In other words, the section forbids the Commissioner from applying the optional homestead exemption to determine the district wealth of chapter 42 schools unless there is a specific appropriation or a surplus in the FSP.

Upon further examination of the statutes, the Commissioner realized that the wealth calculation directive applicable to chapter 41 schools uses a different standard. *See id*. § 41.002 (incorporating Tex. Gov't Code § 403.302(d)(1)–(2)). This provision expressly ***requires*** the Comptroller to factor both mandatory and optional homestead exemptions into the calculation of

taxable value of chapter 41 schools. For the purposes of chapter 41, the property-value calculation

begins with:

> the market value of all taxable property less . . . the total dollar amount of any residence homestead exemptions lawfully granted under Section 11.13(b) or (c), Tax Code, in the year that is the subject of the study for each school district . . . [and] one-half of the total dollar amount of any residence homestead exemptions granted under Section 11.13(n), Tax Code, in the year that is the subject of the study for each school district . . . .

Tex. Gov't Code § 403.302(d)(1)–(2); *see also* Tex. Educ. Code §§ 41.002 (incorporating *id.*),

46.003 (same). The Commissioner further observed that this calculation methodology, unlike the

one in chapter 42, does not vary with state appropriation or fund surplus. Thus, the calculation of

district wealth for the purposes of chapter 41 recapture must reflect 11.13(n) optional homestead

exemptions, and the wealth of districts with those exemptions might be overestimated by applying

the conditions set forth in chapter 42.

In February 2017, the Commissioner decided to change the policy for applying

optional homestead exemptions to calculate recapture for chapter 41 schools. The Commissioner

instructed the TEA and the Comptroller, and the TEA notified each school district of the new policy

by letter:

> Previously, TEA only recognized 50 percent of the value loss due to the LOHE [i.e., the optional homestead exemption] for purposes of calculating recapture under Chapter 41 and facilities funding allotments under Chapter 46 when there was a specific appropriation or a surplus in the FSP. Starting with the 2016–17 school year (and state FY2017), TEA will recognize 50 percent of the value loss due to the LOHE for purposes of calculating recapture under Chapter 41

4

and facilities funding allotments under Chapter 46, regardless of the existence of an appropriation or a surplus in the FSP.

The Commissioner later published the new policy a proposed rule change to its recapture procedures in the *Texas Register*. *See* 42 Tex. Reg. 2132, 2132 (2017) (proposed Apr. 21, 2017) (Tex. Educ. Agency, Commissioner's Rules Concerning the Equalized Wealth Level) (now codified at 19 Tex. Admin. Code § 62.1071). In summary, under the new policy, the Commissioner would begin including optional homestead exemptions to calculate recapture under chapter 41, regardless of appropriation or FSP surplus.

## PROCEDURAL HISTORY

Shortly after TEA's announcement, La Feria Independent School District and Joaquin Independent School District—both of which receive recaptured funds through the FSP—sued the Texas Board of Education, TEA, and the Commissioner in his official capacity, seeking injunctive and declaratory relief from the new interpretation of the statute. They subsequently amended their complaint to add a third plaintiff—a non-profit organization representing hundreds of other school districts receiving recaptured revenue through the FSP. The Plaintiff Districts (collectively, Plaintiffs) asked the district court "to declare that Defendants' new amendment to an existing rule . . . is invalid and issued outside of rulemaking authority under the Texas Administrative Procedure Act . . . [and] further to permanently enjoin Defendants from further implementing the new rule."

The State responded with a plea to the jurisdiction, contending that Plaintiffs have no standing to contest regulations applicable only to chapter 41 districts and arguing in the

5

alternative that Plaintiffs cannot plead a viable claim to overcome sovereign immunity. The district court overruled the plea.

After a hearing on the proposed injunction, the district court rendered an order enjoining enforcement of the rule. The court correctly recognized that "[t]o warrant the issuance of a temporary injunction, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation." *Public Util. Comm'n v. Coal. of Cities for Affordable Util. Rates*, 776 S.W.2d 224, 226 (Tex. App.—Austin 1989, writ dism'd by agr.). As predicate matters, the district court "determine[d] that sovereign immunity has been waived pursuant to § 2001.038 of the Texas Government Code with respect to this cause of action and therefore . . . that the Plaintiffs have standing and the Court has subject matter jurisdiction of the claims in this matter." The district court went on to explain:

> The Court finds that the [letter] was an inadequate, improper, and invalid attempt at a rule amendment. The Court finds that, after this cause of action was filed, on April 21, 2017, TEA published a proposed amendment to 19 Tex. Admin. Code 62.1071 that would amend the 2016–2017 Chapter 41 Manual for Districts Subject to Wealth Equalization by eliminating any reference in the manual to the effects of the adoption of a [section 11.13(n) homestead exemption] by a Chapter 41 district.

The court concluded the fiscal analysis in the formal notice "d[id] not comply with the mandatory requirement that proposed rules contain an accurate fiscal note."

After concluding that Plaintiffs were likely to succeed on their challenge to TEA's interpretation of the statute, the district court addressed the risk of injury. In the absence of injunctive relief, the court explained, the Plaintiffs would "suffer an immediate injury, because they will not receive the funds that would otherwise be provided to them under the current version of 19

Tex. Admin. Code § 62.1071, under which when local optional homestead exemptions are recognized for [c]hapter 41 districts they must also be recognized for [c]hapter 42 districts, such as Plaintiffs, which loss of funds Plaintiffs would be unable to recover in a suit for damages at law." The district court then declared the proposed rule "invalid for good cause" and ordered TEA and its agents "restrained from implementing or continuing to implement or administer the proposed rule amendment."

The district court overruled the plea to the jurisdiction and granted the injunction the same day. The State filed a timely appeal, automatically staying proceedings and suspending enforcement of the injunction. The Commissioner continued relying on his statutory interpretation throughout the 2016–17 school year.

**STANDARD OF REVIEW**

The State appeals from the district court's order overruling its plea to the jurisdiction. The existence of subject-matter jurisdiction is a question of law reviewed de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action"—as is the case here—"and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* "If the evidence creates a fact question regarding

7

the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

## DISCUSSION

The State challenges Plaintiffs' standing and contends they have not pleaded—and cannot plead—any viable cause of action for which sovereign immunity is waived or otherwise inapplicable. It also argues that, even assuming Plaintiffs can establish standing and identify a viable cause of action, the original dispute is moot and any future controversy is not yet ripe. Because standing is dispositive of this appeal, we will analyze that issue first, as our opinion must be "as brief as practicable" while "address[ing] every issue . . . necessary to final disposition of the appeal." Tex. R. App. P. 47.1.

Standing, ripeness, and mootness are questions of justiciability, a doctrine rooted in separation of powers. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 147 (Tex. 2012). The doctrine of separation of powers "bars our courts from rendering advisory opinions and limits access to the courts to those individuals who have suffered an actual, concrete injury." *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). "By raising the issue of justiciability, defendants ask for a determination of whether the named plaintiffs have suffered an actual injury, and whether there exists a live, non-abstract question of law that, if decided, would have a binding effect on the parties." *Id.* (citing *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001)). "Justiciability is a matter of concern in every civil case, and remains a live concern from the first filing through the final judgment." *Id.* (citing *Adjustment v. Wende*, 92 S.W.3d 424, 427 (Tex.

8

2002); *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). We review questions of justiciability de novo. *Id* at 150.

The State challenges Plaintiffs' standing to contest the Commissioner's letter and the subsequently promulgated rule. "Standing is implicit in the concept of subject matter jurisdiction," and is therefore properly challenged in a plea to the jurisdiction. *Texas Ass'n of Bus.*, 852 S.W.2d at 444. To establish standing, "a plaintiff must be personally aggrieved." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) (citing *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996)). "A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress." *Id.* The Supreme Court has summarized the injury requirement as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Heckman*, 369 S.W.3d at 154–55 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Plaintiffs lack standing because they have not identified any actual or imminent injury that might give rise to a claim for redress. *See DaimlerChrysler*, 252 S.W.3d at 304–05. The alleged injuries are: (1) that the new interpretation results in a reduced wealth recapture and therefore might lead to a budget shortfall for the FSP, and (2) that the reduced recapture of wealth will

9

reduce the likelihood of additional funding available from any budget surplus. *See* Tex. Educ. Code § 42.2522(a)(2) (allowing distribution of additional funding under certain circumstances in years with budget surplus). These possibilities are too hypothetical and contingent to give rise to a justiciable controversy.

With respect to the first alleged injury—that the FSP might suffer a budget shortfall from the Commissioner's rule—that possibility is directly refuted by the record. At the hearing on jurisdiction and a possible temporary injunction, the State introduced evidence that the Program had already been adequately funded for the remainder of the 2016–17 school year, when the new policy was in effect. Plaintiffs produced no evidence to the contrary. Nor did they identify any threatened act that might change the adequacy of that funding. And Plaintiffs now concede that the program was adequately funded during the 2016–17 academic year.

Plaintiffs nevertheless contend that even though there was no budget shortfall in the 2016–17 school year, the rule might result in a shortage of funding in the future. Any such claim is too speculative to be justiciable. The funding directed to each chapter 42 school is a function not only of the wealth calculation at issue here, but of a host of factors that change every year. It is undisputed that the state's funding of the schools comes from general revenue, the Property Tax Relief Fund, lottery proceeds, and the Available School Fund, in addition to the recapture at issue here. Plaintiffs argue that *if* every chapter 41 district in the state adopts the maximum optional homestead exemption, *see* Tex. Educ. Code § 42.2522(a), and *if* the student population changes in a certain way, *see id*. § 41.001(2), and *if* the Legislature reduces appropriation from general revenue, *see id*. § 42.251, and *if* several other contingencies come to pass, *see generally id*. §§ 42.007, 42.009,

10

42.253(h), **then** Plaintiffs will see a reduction in funding. But even assuming, for the sake of argument, all of these factors might combine to result in a shortfall in funding of the FSP, TEA would simply ask the Legislature for additional funding under the statutory mandate. *See* Tex. Educ. Code § 42.253. In sum, Plaintiffs' scenario is highly contingent "on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 836–37 (Tex. App.—Austin 2010, no pet.) (quoting *Lujan*, 504 U.S. at 562). Therefore, the alleged injury arising from a hypothetical future budget shortfall does not give rise to a justiciable dispute. *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998).

For similar reasons, the Plaintiffs' second claimed injury—that the Commissioner's rule reduces the likelihood of increased funding available through budget surplus—is not sufficiently concrete to establish standing. When sources of funding exceed expectations, the State may choose to distribute those additional funds to school districts. *See* Tex. Educ. Code § 42.2522. But that distribution is not guaranteed, even assuming any surplus. Instead, the State may return any remaining funds to general revenue or may use the surplus to fund special education. *See id*. § 42.2528. If the State decides against both of those options, it may choose from multiple other options, including distributing funds to school districts. *See id*. § 42.253. Thus, Plaintiffs' alleged injury—a reduction in funds received from surplus—is highly contingent and "may not occur at all." *See Patterson*, 971 S.W.2d at 444. And given all the factors involved, the loss of surplus might not

be "traceable" to the Commissioner's rule, even if that injury were to occur. *See Heckman*, 369 S.W.3d at 154–55. It is therefore insufficient to establish standing. *Id.*

Finally, the cases Plaintiffs cite to establish standing are inapposite. *See generally Finance Comm'n v. Norwood*, 418 S.W.3d 566 (Tex. 2013); *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 733, 735 (Tex. App. 2014). In *Balquinta*, an enrollee in the "Women's Health Program" (WHP) and several Planned Parenthood entities filed suit seeking to overturn state restrictions preventing Planned Parenthood from participating in the new "Texas Women's Health Program" (TWHP), a new health benefits program "similar in scope" to the WHP but funded entirely with state dollars. *Balquinta*, 429 S.W.3d at 733, 735. The parties agreed that the Planned Parenthood entities "sufficiently demonstrated the injury-in-fact and causal connection components of standing," *id*. at 740, as the contested rule "virtually eliminated" the visits that Planned Parenthood would otherwise receive from TWHP-covered clients and reduced the entities' revenues. *Id*. The only dispute over standing was whether the relief the Planned Parenthood entities sought would remedy their injury. *Id*. at 743. Such is not the case here. In the present case, for the reasons already explained, Plaintiffs' alleged injuries are speculative and dependent on a host of contingencies unrelated to the operation of the challenged rule to satisfy the injury-in-fact and causal connection elements of standing. Thus, *Balquinta* does not support plaintiffs' argument on standing.

In *Norwood*, the plaintiffs challenged government agencies' interpretation of the law regarding home-equity loans, specifically article XVI, section 50 of the Texas Constitution. *Norwood*, 418 S.W.3d at 570–74. The agencies argued that the plaintiffs—individual homeowners who had each taken out a home-equity loan in the past—lacked standing because they had failed to

allege "an intent to acquire an additional home equity loan." *Id*. at 582. The plaintiffs responded that their "prospective interest in home equity loans" was sufficient to confer standing, and the Supreme Court agreed. *Id*. at 582–83. Observing that "[i]njury lies only in the [agencies'] misinterpretation of Section 50, and then only to a person's interest in obtaining a home equity loan in the future," *id*. at 581, the court concluded that the plaintiffs' prospective interest in home equity loans was "unquestionably affected by the [agencies'] interpretations" of the law. *Id*. at 583. The court explained that, "[e]ven if the Homeowners' interest were solely in refinancing existing home-equity loans, the refinancing would have to satisfy the requirements of Section 50." *Id*. And the misinterpretation of Section 50, the court added, would cause some homeowners to pay more than they were legally required and others to forgo seeking a loan—both of which were sufficient injuries for standing purposes. *See id*. at 583–84 ("The homeowner who does not intend to apply for a home equity loan and will probably not obtain one, all because of incorrect interpretations of Section 50, is no less injured than the homeowner whose loan is closed under such misinterpretations.").

Thus, in *Norwood*, the injury was contingent on the plaintiffs themselves doing what they alleged they intended to do, i.e., taking out home-equity loans. Here, in contrast, the injury is contingent on "the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Good Shepherd Med. Ctr.*, 306 S.W.3d at 836–37 (quoting *Lujan*, 504 U.S. at 562). Plaintiffs' reliance on *Norwood* is therefore misplaced.

13

**CONCLUSION**

In summary, Plaintiffs' alleged injury is too remote to satisfy constitutional standing requirements. Because we conclude this dispute is not justiciable, we reverse the district court's order overruling the plea to the jurisdiction, vacate its injunction order, and render judgment dismissing the cause.

_____
Michael Toth, Justice

Before Chief Justice Rose, Justices Goodwin and Toth

Vacated in Part; Reversed and Rendered in Part

Filed:   December 21, 2018