ACCEPTED
03-17-00338-CV
21306123
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2017 4:33 PM
JEFFREY D. KYLE
CLERK

**No. 03-17-00338-CV**

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2017 4:33:18 PM
JEFFREY D. KYLE
Clerk

———————

MIKE MORATH, COMMISSIONER OF EDUCATION;
THE TEXAS EDUCATION AGENCY; AND THE TEXAS
STATE BOARD OF EDUCATION,

*Appellants*,

*v.*

LA FERIA ISD; JOAQUIN ISD; AND THE EQUITY CENTER,

*Appellees.*

———————

On Appeal from the
261st Judicial District Court, Travis County

———————

## REPLY BRIEF FOR APPELLANTS

———————

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

BETH KLUSMANN
Assistant Solicitor General
State Bar No. 24036918
beth.klusmann@oag.texas.gov

Counsel for Appellants

# TABLE OF CONTENTS

Page

Index of Authorities ........................................................................................... iii

Introduction ......................................................................................................... 1

Argument .............................................................................................................. 1

    I.   The Court Lacks Jurisdiction Over Claims Regarding the 2016-2017 School Year and the Former Proposed Rule. ................................... 1

        A.  Because the 2016-2017 school year is over, no relief for that year can be granted .................................................................................. 2

        B.  Because TEA has proposed and adopted a new rule, any previous rule-based challenges are moot. .......................................... 3

    II.  Plaintiffs' Alleged Injuries Are Too Attenuated from the Commissioner's Recapture Decision to Satisfy the Standing Requirements. ...................................................................................... 4

        A.  Plaintiffs will not suffer any injury unless multiple events, controlled by multiple third parties, occur ........................................ 5

        B.  Case law does not support finding that Plaintiffs have standing. ............................................................................................. 8

    III.  Plaintiffs Have Not Demonstrated That Their Claims Regarding Future Years Are Ripe. ............................................................................ 11

    IV.  Plaintiffs Have Not Identified a Waiver of Sovereign Immunity. ............. 12

        A.  Texas Government Code section 2001.038 does not waive sovereign immunity for Plaintiffs' claims. ........................................ 13

        B.  Because the Commissioner acted within his discretion, Plaintiffs cannot demonstrate an ultra vires claim. ........................... 16

        C.  The UDJA does not waive sovereign immunity in this case .............. 19

    V.  Plaintiffs Have Not Demonstrated Their Entitlement to the Temporary Injunction. ......................................................................... 21

Prayer ................................................................................................................. 23

Certificate of Service .......................................................................................... 24

Certificate of Compliance ................................................................................... 24

# Index of Authorities

Page(s)

**Cases**

*Butnaru v. Ford Motor Co.*,
84 S.W.3d 198 (Tex. 2002) ............................................................................ 21

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ................................................................ 2, 16, 20

*El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*,
247 S.W.3d 709 (Tex. 2008) ........................................................................ 14

*Fin. Comm'n of Tex. v. Norwood*,
418 S.W.3d 566 (Tex. 2013) ..................................................................... 9, 10

*Fleming Foods of Tex., Inc. v. Rylander*,
6 S.W.3d 278 (Tex. 1999) ............................................................................ 19

*Good Shepherd Med. Ctr., Inc. v. State*,
306 S.W.3d 825 (Tex. App.—Austin 2010, no pet.) ........................................ 8

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017) ........................................................................ 16

*Heckman v. Williamson Cty.*,
369 S.W.3d 137 (Tex. 2012) .......................................................................... 5

*Humble Oil & Ref. Co. v. Calvert*,
414 S.W.2d 172 (Tex. 1967) ........................................................................ 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 5

*M.D. Anderson Cancer Ctr. v. Novak*,
52 S.W.3d 704 (Tex. 2001) ............................................................................ 4

*Patel v. Tex. Dep't of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) .......................................................................... 11

*Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*,
971 S.W.2d 439 (Tex. 1998) ........................................................................ 12

*Pub. Util. Comm'n v. City of Austin*,
728 S.W.2d 907 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ...................... 19, 20

*State Bd. of Ins. v. Deffebach*,
    631 S.W.2d 794 (Tex. App.—Austin 1982, writ ref'd n.r.e.) .............................8

*Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*,
    145 S.W.3d 170 (Tex. 2004) ......................................................................18, 19

*Tex. Dep't of Pub. Safety v. Moore*,
    985 S.W.2d 149 (Tex. App.—Austin 1998, no pet.) .................................. 19, 20

*Tex. Dep't of State Health Servs. v. Balquinta*,
    429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd) ............................. 9, 10

*Tex. Dep't of Transp. v. Sefzik*,
    355 S.W.3d 618 (Tex. 2011) (per curiam) ..........................................................20

*Tex. Dep't of Transp. v. Sunset Transp., Inc.*,
    357 S.W.3d 691 (Tex. App.—Austin 2011, no pet.) ..........................................20

*Tex. Dep't of Transp. v. Tex. Weekly Advocate*,
    No. 03-09-00159-CV, 2010 WL 323075
    (Tex. App.—Austin Jan. 29, 2010, no pet.)........................................................4

*Tex. Mun. Power Agency v. Pub. Util. Comm'n*,
    100 S.W.3d 510 (Tex. App.—Austin 2003, pet. denied) ........................... 19, 20

*Tex. Nat. Res. Conservation Comm'n v. IT–Davy*,
    74 S.W.3d 849 (Tex. 2002) ..................................................................................2

*Tex. Dep't of State Health Servs. v. Balquinta*,
    429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd)............................. 9, 10

*Waco Indep. Sch. Dist. v. Gibson*,
    22 S.W.3d 849 (Tex. 2000).......................................................................... 11, 12

**Constitutional Provisions, Statutes, and Rules**

Tex. Civ. Prac. & Rem. Code:
    § 37.003 .................................................................................................................2
    § 37.006 ...............................................................................................................20

Tex. Educ. Code:
    § 7.057 ................................................................................................................ 14
    ch. 41 .................................................................................................................. 13

§ 41.001(2) ......................................................................................... 16

§ 41.013(a) ........................................................................................ 14

§ 41.013(c) ............................................................................... 13, 14, 15

§ 41.013(d) ........................................................................................ 15

§ 42.2517 ........................................................................................ 3, 7

§ 42.252(a) ........................................................................................ 16

§§ 42.2521-24 ................................................................................... 3, 7

§ 42.2522 ....................................................................... 2, 16, 17, 18

§ 42.2522(a) ...................................................................................... 17

§ 42.2528 ....................................................................................... 3, 7

§ 42.253(h) ..................................................................................... 2, 6

§ 46.003(a) ........................................................................................ 16

Tex. Gov't Code:

§ 403.302(d) ..................................................................................... 16

§ 403.302(d)(2) ................................................................................. 16

§ 403.302(j) ...................................................................................... 18

ch. 2001 ...................................................................................... 13, 14

§ 2001.003(6) ................................................................................... 14

§ 2001.038 ................................................................................... 2, 13

§ 2001.038(a) ...................................................................................... 2

Tex. Tax Code § 11.13(n) ................................................................... 16

42 Tex. Reg. 4187 (2017) ............................................................ 3, 15, 22

42 Tex. Reg. 5747 (2017) ..................................................................... 4

42 Tex. Reg. 6663 (2017) ............................................................... 3, 15

## Other Authorities

Act of May 30, 1999, 76th Leg., R.S., ch. 396, § 1.36,
1999 Tex. Gen. Laws 2471 ................................................................ 18

Conf. Comm. Report, S.B. 1, 85th Leg., R.S. (2017), available at
http://www.lbb.state.tx.us/Documents/Appropria-
tions_Bills/85/Conference_Bills/SB1_Conference_Bill.pdf ............................ 6

# Introduction

Plaintiffs' brief fails to demonstrate that this Court has jurisdiction over Plaintiffs' claims. Plaintiffs do not dispute the key facts related to the standing and ripeness arguments, namely that multiple contingent events, controlled by multiple third parties, will all determine whether the Commissioner's decision to use property values reduced by the local-optional homestead election (LOHE) will ever impact Plaintiffs. Without an imminent impact on their interests, Plaintiffs cannot challenge Defendants' treatment of other school districts. Sovereign immunity also bars Plaintiffs' claims because Plaintiffs have not identified a statute that would allow them to bring Defendants into court. Neither Texas Government Code section 2001.038 nor the Uniform Declaratory Judgments Act applies in this case. Moreover, the Commissioner was correct in his interpretation of the law, and Plaintiffs offer no textual arguments to the contrary. The Court should reverse the ruling of the trial court and dismiss this case for lack of jurisdiction or, alternatively, reverse the temporary injunction.[1]

# Argument

## I. The Court Lacks Jurisdiction Over Claims Regarding the 2016-2017 School Year and the Former Proposed Rule.

Since Defendants filed their opening brief, at least two significant events have occurred that impact the arguments in this case. First, the 2016-2017 school year has

---

[1] Because Plaintiffs' brief makes no attempt to demonstrate any claim against the State Board of Education or identify any allegedly improper action taken by the Board, the Board should be dismissed regardless of the outcome of the remainder of the appeal.

ended with no shortage of Foundation School Program (FSP) funding. And second, TEA withdrew the proposed rule that was challenged in this case and adopted a new rule with a more descriptive fiscal note. Both events eliminate claims originally brought by Plaintiffs.

## A. Because the 2016-2017 school year is over, no relief for that year can be granted.

As Plaintiffs note, the 2016-2017 school year finished with a surplus of FSP funding. Appellees' Br. 13. TEA, therefore, was not required to prorate FSP funding, *see* Tex. Educ. Code § 42.253(h), and each district received the amount to which it was entitled. The surplus funding was not, however, distributed to districts under Texas Education Code section 42.2522 to compensate for their LOHEs.

For purposes of this litigation, then, 2016-2017 is no longer at issue. None of Plaintiffs' potential causes of action permit retroactive relief against the State. Texas Government Code section 2001.038 and the Uniform Declaratory Judgments Act do not permit retroactive relief, but allow only declaratory judgments. Tex. Gov't Code § 2001.038(a); Tex. Civ. Prac. & Rem. Code § 37.003; *see also Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim."). Likewise, a plaintiff bringing an ultra vires claim may seek only *prospective* injunctive relief. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 375-76 (Tex. 2009). Plaintiffs have not identified any waiver of immunity that would permit a court to order the Commissioner or TEA to collect

recapture for a previous year.[2] Consequently, there is no jurisdiction over claims regarding the 2016-2017 school year. This brief will, therefore, focus on claims in 2017-2018 and beyond.

## B. Because TEA has proposed and adopted a new rule, any previous rule-based challenges are moot.

Next, TEA has withdrawn the proposed rule challenged by Plaintiffs, which removed references to section 42.2522 from the Manual for Districts Subject to Wealth Equalization (the "Wealth Equalization Manual"), along with its allegedly insufficient fiscal note. 42 Tex. Reg. 4187, 4271 (2017). Instead, TEA has proposed and adopted a nearly identical rule with a more descriptive fiscal note. 42 Tex. Reg. 6663, 6793-94 (2017); 42 Tex. Reg. 4187, 4222-24 (2017). The new rule took effect on December 5, 2017. 42 Tex. Reg. at 6794.

As explained in the new fiscal note, the new rule will not have a fiscal impact on state and local governments because it merely tracks the statutes enacted by the Legislature. 42 Tex. Reg. at 4223. It is the statutes that cause any fiscal impact, not the rule. *Id.* Regardless, TEA also clarified in its fiscal note that there will be a reduction in recapture as a result of TEA modifying its practices to conform with the statute,

---

[2] But even that order would not necessarily result in relief for Plaintiffs, as the Legislature must then be given a chance to sweep the additional recapture back into General Revenue. 2.RR.179. If funds were left with the Commissioner, he must first spend them on video surveillance in special-needs classes. Tex. Educ. Code § 42.2528. He then has multiple options, including payment for LOHEs, on how to spend the funds. 2.RR.180; Tex. Educ. Code §§ 42.2517, .2521-24.

which is the information Plaintiffs claim was missing from the original fiscal note. *Id.*; CR.111-12.

Although Defendants contend that the Commissioner's decisions in this area are not required to be adopted by rule, *see infra* at 13-15, any procedural questions regarding the rule-making process have been mooted by the withdrawal of the old proposed rule and adoption of a new rule. *Tex. Dep't of Transp. v. Tex. Weekly Advocate*, No. 03-09-00159-CV, 2010 WL 323075, at *2 (Tex. App.—Austin Jan. 29, 2010, no pet.). Plaintiffs' rule-based challenge must, therefore, focus solely on any alleged deficiencies in the new rule.[3]

## II. Plaintiffs' Alleged Injuries Are Too Attenuated from the Commissioner's Recapture Decision to Satisfy the Standing Requirements.

Plaintiffs do not have standing because they lack a sufficient stake in the outcome of this litigation. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707-08 (Tex. 2001). They do not explain how the Commissioner's collection of recapture from *other* school districts harms Plaintiffs in a way that is actual, imminent, and redressable by a favorable ruling; instead, Plaintiffs simply assert that they will be injured. Plaintiffs' attempts to compare their alleged injury to other cases in which courts have found standing fall short, as none of those cases involves the multiple contingencies, many of which are outside of Defendants' control, that this case does.

---

[3] TEA has also published proposed Wealth Equalization Manuals for 2017-2018 and 2018-2019 in the Texas Register. 42 Tex. Reg. 5747, 5825-26 (2017). Both Manuals follow the updated 2016-2017 Manual with respect to LOHEs and section 42.2522.

Plaintiffs do not dispute that standing generally requires showing an injury-in-fact that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted)); Appellees' Br. 11-12. Nor do they dispute that the alleged injury must be caused by the defendant's conduct and that it will likely be redressed by a favorable decision. *Heckman*, 369 S.W.3d at 154-55. But Plaintiffs fail to show how their allegations satisfy these standards, either factually or legally.

## A. Plaintiffs will not suffer any injury unless multiple events, controlled by multiple third parties, occur.

Plaintiffs allege a monetary injury—either there will be insufficient FSP funding, resulting in proration of FSP amounts, or there will be a smaller FSP surplus, lessening their chance at receiving additional funding. CR.108-09. They assert that there was "uncontroverted evidence of severe fiscal impact to school districts statewide." Appellees' Br. 12. There was not. Rather, Defendants explained (and Plaintiffs did not contest) the lengthy and speculative chain of events that must take place before Plaintiffs could possibly feel the effect of the Commissioner's recapture decision.

1.    As described in Defendants' opening brief, proration of FSP funding is a last resort, should other measures fail to produce sufficient FSP funds. Appellants' Br. 7. First, there must be an insufficient amount of FSP funding, meaning all of the sources of FSP, combined, fall short of what is necessary. 2.RR.176-78 (describing the sources of FSP funding, which include legislative appropriations, tax revenues,

and lottery proceeds, in addition to recapture). Plaintiffs did not demonstrate that this was likely.

Even so, if there is shortfall, Plaintiffs may not be harmed. If the shortfall is in the first year of the biennium, Defendants may use funding from the second year of the biennium to make up the gap. If the shortfall is in the second year of the biennium, the Legislature has the option to make a supplemental appropriation to cover the gap. Tex. Educ. Code § 42.253(h). With a single exception in the 1980s, the Legislature has always provided supplemental funding when necessary. 2.RR.142-43. Only if the Legislature chooses not to act will FSP funding be prorated before being repaid in full the next year. Tex. Educ. Code § 42.253(h) ("The following fiscal year: (1) a district's or school's entitlement under this section is increased by an amount equal to the adjustment made under this subsection . . . .").

Plaintiffs do not discuss section 42.253 or proration anywhere in their brief, so it appears that they have abandoned this argument. Regardless, Plaintiffs have not shown that reducing recapture will cause FSP funding to fall short of FSP entitlements in any future year. Excluding recapture payments and federal funds, the Legislature has appropriated approximately $21 billion for school finance for the 2017-2018 school year. Conf. Comm. Report, S.B. 1, 85th Leg., R.S. (2017).[4] There is no showing that this amount will be insufficient. Consequently, any injury to Plaintiffs under this theory is not actual and imminent, but rather speculative, as it depends on

---

[4]    http://www.lbb.state.tx.us/Documents/Appropriations_Bills/85/Conference_Bills/SB1_Conference_Bill.pdf (see art. III, p. 247).

the performance of other sources of FSP funding and the Legislature's appropriation decisions.

2. Plaintiffs' other argument is that they "could be" awarded "additional funding" in the event of a surplus and that the Commissioner's decision makes that possibility less likely. Appellees' Br. 13. But Plaintiffs do not have an entitlement to additional funding under section 42.2522—only a possibility of funding, should other contingencies fall into place. Appellants' Br. 8. If there is a surplus in FSP funding (which, again, depends on a variety of factors including lottery proceeds, taxes, and legislative appropriations), the Legislature may choose to sweep that surplus back into General Revenue, as it has done in the past. 2.RR.179. If the Legislature leaves the surplus with the Commissioner, he must first pay for video surveillance in special-needs classrooms. Tex. Educ. Code § 42.2528; 2.RR.180. If there is funding left after that, the Commissioner has multiple options on which to spend the surplus, one of which is payment for LOHEs under section 42.2522. 2.RR.180; *see, e.g.*, Tex. Educ. Code §§ 42.2517, .2521-2524.

In other words, even if a surplus existed, section 42.2522 does not require the Commissioner to use that surplus to pay Chapter 42 districts for their LOHEs. Plaintiffs have not, then, been "den[ied] . . . a monetary benefit to which they would otherwise be legally entitled." Appellees' Br. 12. At most, the Commissioner's recapture decision has lessened the possibility that someday the Commissioner might choose to distribute surplus funds under section 42.2522.

Plaintiffs cannot demonstrate the requisite actual and imminent harm that they will incur as a result of the Commissioner's conduct towards other districts. Multiple

events, controlled by multiple non-party actors, must occur before Plaintiffs could possibly feel any impact (for better or worse) of the Commissioner's recapture decision. Moreover, given that many of the contingencies, such as the performance of certain taxes, income from lottery proceeds, and legislative decisions, are outside of Defendants' control, it is impossible to redress Plaintiffs' alleged injuries with an order in this case. *See Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 836-37 (Tex. App.—Austin 2010, no pet.). The alleged harms are too attenuated from the Commissioner's conduct to give Plaintiffs a stake in the outcome of this litigation. Plaintiffs do not have standing.

## B. Case law does not support finding that Plaintiffs have standing.

Plaintiffs' attempts to compare themselves to plaintiffs in other cases in which standing was found fall short. In those cases, the plaintiffs were directly injured, or very likely to be injured, by the actions of the government agency. There was not a series of contingent events that had to first occur before any harm would be felt. And enjoining the governmental action in those cases would have unquestionably redressed the problem.

For example, in *State Board of Insurance v. Deffebach*, the State Board of Insurance promulgated rules setting presumptively reasonable insurance rates. 631 S.W.2d 794, 797 (Tex. App.—Austin 1982, writ ref'd n.r.e.) (cited in Appellees' Br. 12). An insurance agent sued because the presumptive rates acted as a cap on the amount of commission he could earn. *Id.* This Court determined that the agent had standing, as he would suffer financial injury. *Id.*

Plaintiffs assert that their alleged future financial injury is, likewise, sufficient to confer standing. It is not. The presumptive rates in *Deffebach* would necessarily reduce commissions to the plaintiff; no speculation was required. For the reasons explained above, however, it is possible—and perhaps likely—that Plaintiffs will never suffer a legal injury as a result of the Commissioner's actions. *Deffebach* is not similar.

Plaintiffs attempt the same reasoning with *Finance Commission of Texas v. Norwood*, 418 S.W.3d 566 (Tex. 2013), and *Texas Department of State Health Services v. Balquinta*, 429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd), claiming that the financial injuries in those cases are similar to Plaintiffs' own purported injury. Appellees' Br. 14. But the circumstances are not comparable. In *Norwood*, the plaintiffs were individual homeowners who challenged government agencies' interpretations of law regarding home equity loans. 418 S.W.3d at 574-75. The parties agreed that the interpretations would affect the plaintiffs, should they seek home equity loans in the future, as the interpretations would increase the amount the plaintiffs would have to pay. *Id.* at 582-83. The only question was whether the plaintiffs had sufficiently pleaded that they intended to take out such loans in the future. *Id.* The Texas Supreme Court held that the plaintiffs had adequately pleaded that they intended to seek home equity loans in the future. *Id.* at 583. Thus, unlike this case, the *Norwood* plaintiffs' injury was non-speculative and not dependent on a chain of events unrelated to the defendants' actions.

Plaintiffs also cite the *Norwood* majority's statement that "greater specificity is unreasonable," which it made in response to the dissent's argument that the plaintiffs' pleadings were too general. Appellees' Br. 16 (citing *Norwood*, 418 S.W.3d at

9

584). As the Supreme Court explained, the specifics of any particular home equity loan would not be known until it was effectively too late to obtain a judicial remedy. *Norwood*, 418 S.W.3d at 584. But the fact of an injury, if not its complete scope, was still apparent. *Id.* Again, that is different from the situation here. Plaintiffs' failure to demonstrate standing does not stem from a failure to identify precise dollar amounts, but rather from their inability to identify if, when, and how the Commissioner's recapture decision will affect them.

In *Balquinta*, various Planned Parenthood entities sued when new state rules prohibited them from participating in a government-created health-care market. 429 S.W.3d at 735, 740. This injury was not remote or speculative, but actual and imminent. The State was not creating an incidental impact on the plaintiffs by regulating other entities, but was directly regulating the plaintiffs' ability to participate in the market. *Id.* at 740. Those plaintiffs' claims are not comparable to Plaintiffs' claims here, which are based on decisions regarding other school districts.

All of Plaintiffs' arguments stem from the theory that any impact on FSP funding could someday impact Plaintiffs. If that theory is correct, then Plaintiffs would have standing to sue regarding any source of FSP funding, be it tax decisions made by the Comptroller or decisions of the Texas Lottery Commission. Standing cannot stretch that far. There is no limiting principle to Plaintiffs' position, and they do not attempt to identify one. Plaintiffs' alleged harm is too far removed from the actions of the Commissioner in collecting recapture and will not be redressed by a favorable decision. The Court should dismiss Plaintiffs' lawsuit for lack of standing.

## III. Plaintiffs Have Not Demonstrated That Their Claims Regarding Future Years Are Ripe.

Other than citing the legal standard for ripeness, Plaintiffs make no argument that their claims regarding future years are ripe. Appellees' Br. 12. A claim is ripe when "at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 78 (Tex. 2015) (internal quotation marks and emphasis omitted). But for the reasons described above, Plaintiffs' claims are entirely contingent on uncertain future events, many of which are not within the Commissioner's control. Speculating about events that may or may not come to pass is not constitutionally permissible, nor a good use of judicial resources. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) (explaining that ripeness doctrine prevents advisory opinions and avoids premature adjudication of issues).

Several decisions from the Texas Supreme Court demonstrate that Plaintiffs' claims are not ripe. In *Gibson*, Waco ISD adopted a policy that required students to pass certain standardized tests before being promoted to the next grade. *Id.* at 850. Parents sued over this policy, claiming that it would disproportionately harm minority students, *id.*, but the Court held that the case was not ripe.

At the time suit was filed, the test results had not been released, no student had been retained, and no harm had occurred. *Id.* at 852. Absent an existing injury, the Court considered whether the plaintiffs had shown that injury was likely in the future. *Id.* The Court concluded that there was insufficient evidence in the record that

minorities would fail all three testing opportunities in disproportionate numbers, meaning the case was based on speculation and conjecture. *Id.* at 852-53. Thus, the Court dismissed the case. *Id.* at 853. Likewise here, Plaintiffs have not yet been harmed, and there is insufficient evidence that they are likely to suffer harm in the future.

The Court reached a similar conclusion in *Patterson v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 971 S.W.2d 439 (Tex. 1998). There, several Planned Parenthood entities sued regarding the future implementation of a budget rider that might have resulted in a loss of federal family planning funds in Texas. *Id.* at 440-41. But the evidence showed that the state agency had not yet decided how to implement the rider, and there was no evidence regarding the federal government's plans to continue funding. *Id.* at 444. The Supreme Court concluded that these contingencies prevented the claim from being ripe. *Id.*

As in *Patterson*, "[t]his is precisely the kind of case in which resolution of the claim presented depends on the occurrence of contingent future events that may not occur as anticipated or may not occur at all." *Id.* Tax revenues, lottery proceeds, appropriations, legislative discretion, and more will all determine whether the Commissioner's recapture decision will ever impact Plaintiffs. And none of that information can be known now. Plaintiffs' claims are not ripe and should be dismissed.

## IV. Plaintiffs Have Not Identified a Waiver of Sovereign Immunity.

Even if the Court determines that Plaintiffs have established standing and that their claims are ripe, their suit is still barred by sovereign immunity. None of the statutes identified by Plaintiffs permits this lawsuit, and any ultra vires claim is

12

barred because the Commissioner's actions are in compliance with the law. Thus, for this additional reason, Plaintiffs' claims should be dismissed.

## A. Texas Government Code section 2001.038 does not waive sovereign immunity for Plaintiffs' claims.

Plaintiffs attempt to bring a rule challenge under Texas Government Code section 2001.038, but section 2001.038 does not apply in these circumstances. The Legislature has decreed that Chapter 2001 of the Texas Government Code does not apply to the Commissioner's decisions under Chapter 41 of the Texas Education Code. Tex. Educ. Code § 41.013(c) (stating that Chapter 2001 of the Texas Government Code "does not apply to a decision of the [C]ommissioner" under Chapter 41). Relevant here, Chapter 2001 contains the procedures for contested-case hearings, the rule-making process, and section 2001.038, which permits certain challenges to administrative rules.

The Commissioner has decided that he must use LOHE-reduced property values to determine the amount of recapture a Chapter 41 district must pay. Whether considered as a single decision or a series of individual decisions (one for each district paying recapture), section 41.013(c) exempts the Commissioner's decisions from (1) contested-case proceedings, (2) the rule-making process, and (3) challenges under section 2001.038. Thus, section 2001.038 cannot be used to waive sovereign immunity in this case.

To avoid this outcome, Plaintiffs claim that the Commissioner's decision is really a "rule" under Chapter 2001. Plaintiffs first argue that a "decision" as used in

section 41.013(c) refers only to the result of a contested-case proceeding under Chapter 2001, and because there was no contested-case proceeding, the Commissioner's action was not a decision, but a rule. Appellees' Br. 18. But that argument fails as a textual and logical matter. Neither Texas Education Code Chapter 41 nor Texas Government Code Chapter 2001 define "decision." But section 41.013(a) states that a "decision" of the Commissioner "under this chapter" can be appealed under Texas Education Code section 7.057. Section 7.057 does not require any contested-case proceedings before an appeal may be taken. Assuming the word "decision" has the same meaning in subsection (a) of section 41.013 as it does in subsection (c), a "decision" does not require a contested-case proceeding. Thus, there is no textual support for Plaintiffs' position.

Nor is Plaintiffs' argument supported by logic. Contested-case proceedings are governed by Chapter 2001 of the Texas Government Code, which expressly does not apply to the Commissioner's decisions. It is unclear what would be reviewed in a contested-case proceeding, other than a decision of the Commissioner, in which case Plaintiffs' reasoning is entirely circular.

Plaintiffs also argue that the Commissioner's decision to use LOHE-reduced property values meets the definition of a "rule" in Texas Government Code section 2001.003(6) and related precedent. Appellees' Br. 19 (citing *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008)). But, again, by exempting the Commissioner's decisions from Chapter 2001, the Legislature also exempted them from the rule-making process found in Chapter 2001. Decisions that do not meet the definition of a "rule" are not subject to Chapter 2001 in the first

14

place, so it would not be necessary for the Legislature to explicitly exempt them from Chapter 2001. The only way to give full effect to section 41.013(c) is to hold that it exempts the Commissioner's decisions from the rule-making process, even when such decisions might otherwise be considered a "rule."

TEA's choice to amend its Wealth Equalization Manual through the rule-making process does not waive the protections of section 41.013(c). As it explained when adopting recent amendments to the manual, TEA did not intend to waive section 41.013(c) or subject itself to Chapter 2001. 42 Tex. Reg. at 4223. TEA can choose to formalize and publicize its wealth-equalization policies through the Texas Register, Tex. Educ. Code § 41.013(d), but it is not required to do so, *id.* § 41.013(c).

And even if the adoption of the Wealth Equalization Manual is a "rule" and not a decision, Plaintiffs' challenge still does not fall within section 2001.038's waiver of immunity. The amendments to the Wealth Equalization Manual simply removed references to LOHEs and section 42.2522. 42 Tex. Reg. at 6793-94. As adopted, the Manual does not require the use of LOHE-reduced property values for determining recapture, but instead is silent on the question. Because the Manual does not affirmatively state that LOHE-reduced property values should be used in calculating recapture, there is no rule regarding LOHE-reduced property values for Plaintiffs to challenge. Instead, it is the Commissioner's decision (that was not adopted as a rule and was not required to be adopted as a rule) that they oppose. And that decision is exempt from challenge under section 2001.038. Plaintiffs must look elsewhere for a waiver of immunity.

15

## B. Because the Commissioner acted within his discretion, Plaintiffs cannot demonstrate an ultra vires claim.

In order to demonstrate jurisdiction over an ultra vires claim, a plaintiff must plead and prove an act that is outside the scope of the government official's authority. *Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017); *Heinrich*, 284 S.W.3d at 372. In other words, if the government official is not violating the law, there is no jurisdiction over an ultra vires claim. Here, the Commissioner's decision to limit the application of section 42.2522 to calculations under Chapter 42 is within his discretion because it is what the law requires.

Stated as simply as possible, using LOHE-reduced property values benefits a school district, regardless of whether it is a Chapter 41 or 42 district. Chapter 41 districts pay less in recapture, and Chapter 42 districts receive additional state aid. Appellants' Br. 5-6. But the Texas Legislature has limited the use of LOHE-reduced property values in Chapter 42 calculations. Tex. Educ. Code § 42.2522.

Chapters 41, 42, and 46 all refer to the "taxable value" of property, as "determined under Subchapter M, Chapter 403, Government Code." *See, e.g.*, Tex. Educ. Code §§ 41.001(2), 42.252(a), 46.003(a). Subchapter M of the Government Code contains only one definition for "taxable value"—found in section 403.302(d). In addition to other adjustments not relevant here, taxable value in Subchapter M is "the market value of all taxable property less: . . . one-half of the total dollar amount of any residence homestead exemptions granted under Section 11.13(n), Tax Code, in the year that is the subject of the study for each school district." Tex. Gov't Code § 403.302(d)(2). Thus, notwithstanding Plaintiffs' suggestion, Appellees' Br. 26,

references to taxable value in Chapters 41, 42, and 46 refer to the LOHE-reduced property value.[5]

Chapter 42, however, contains an exception to the use of LOHE-reduced property values found in section 42.2522. Plaintiffs do not dispute that, under that section, the Commissioner may not use the LOHE-reduced property value to "provide funding" unless (1) the Legislature specifically appropriates funds for that purpose, or (2) there is a surplus of FSP funding. Tex. Educ. Code § 42.2522(a). Section 42.2522 is limited to the provision of funding under "this chapter," which is Chapter 42. Therefore, the limitation on the use of LOHE-reduced property values is only as to Chapter 42, not Chapters 41 and 46. The plain language of the text does not permit any other interpretation.[6]

Similarly, the legislative history that Plaintiffs cite discusses "state aid." Appellees' Br. 6. Chapter 41 concerns recapture, in which districts send money to the State. It does not involve state aid or the provision of funding to districts. Because section 42.2522 does not impact Chapter 41, it makes sense that the legislative history of section 42.2522 does not refer to Chapter 41. The absence of any reference

---

[5] For this reason, Plaintiffs are incorrect to claim that Joaquin ISD's LOHE will not be considered. Appellees' Br. 13. It will be considered for Chapter 46 funding, and Joaquin will receive additional funding as a result. 2.RR.69, 89.

[6] The Commissioner denies Plaintiffs' suggestion that he was seeking to favor wealthy school districts. Appellees' Br. 1, 14. The Commissioner considered the comments of several districts and concluded that he had been misinterpreting the law. 2.RR.55, 59. That the Commissioner's decision provides greater benefits to Chapter 41 districts is a function of the law the Legislature wrote, not some improper desire to benefit wealthy districts.

to recapture in the legislative history of section 42.2522 is not proof of what the Legislature intended when the statutory language is clear.

Plaintiffs point to former Texas Government Code section 403.302(j), Appellees' Br. 25-26, which required the Comptroller to provide both total property values and LOHE-reduced property values to the Commissioner. Act of May 30, 1999, 76th Leg., R.S., ch. 396, § 1.36, 1999 Tex. Gen. Laws 2471, 2486. But that subsection explicitly referred to section 42.2522. *Id.* (stating "[f]or purposes of Section 42.2522"). Because section 42.2522 gives the Commissioner the option, in certain circumstances, of providing funding based on either value, it makes sense to have both values prepared. Former section 403.302(j) did not refer to Chapters 41 or 46 because those chapters refer to only one value—the LOHE-reduced property value.[7]

Plaintiffs continue to argue that the doctrine of legislative acceptance binds the Commissioner to his previous (incorrect) interpretation of the Texas Education Code. Appellees' Br. 27-28. That argument fails for two reasons. First, the statute at issue must be ambiguous before the doctrine applies. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). As just explained, there is no ambiguity about (1) the meaning of Chapter 41.001(2); or (2) the scope of section 42.2522. Moreover, the doctrine cannot be used to bind an agency

---

[7] It is of no moment that former section 403.302(j) required the Comptroller to provide both values for *all* districts, which would include Chapter 41 districts. Appellees' Br. 26. Despite the shorthand used in this case, all districts have their FSP entitlements calculated under Chapter 42. Rather than carving out districts that might not receive funding under Chapter 42 (an ever-changing subset), the Legislature simply included all districts in this requirement.

to an incorrect interpretation of a statute. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999).

Second, the statutes at issue (sections 41.001(2) and 42.2522(a)) have not been re-enacted, which is the second requirement for legislative acceptance. *Mega Child*, 145 S.W.3d at 176. In *Humble Oil and Refining Co. v. Calvert*, the Supreme Court applied the legislative-acceptance doctrine when an entire statutory scheme had been codified with the same language. 414 S.W.2d 172, 180 (Tex. 1967). No such legislative act exists here. At most, portions of other statutes or subsections were amended, Appellees' Br. 27-28, but the relevant sections never were. A decision not to amend a portion of a statute is different from affirmatively re-adopting the same language. The latter indicates an intent to accept the previous interpretation of that language, while the former indicates only a desire to alter different language.

The Commissioner was correct to interpret the statutes as he did. Because his actions were within the scope of his discretion, there can be no ultra vires claim and no jurisdiction over the Commissioner.

### C.  The UDJA does not waive sovereign immunity in this case.

Plaintiffs cite three cases from this Court to argue that the UDJA permits a plaintiff to sue a state agency to resolve dispute about the interpretations of law. Appellees' Br. 21-22 (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 100 S.W.3d 510, 518 (Tex. App.—Austin 2003, pet. denied), *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.), and *Pub. Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 910-11 (Tex. App.—Austin 1987, writ ref'd n.r.e.)). But these cases all rested on the erroneous conclusion that sovereign immunity did not

bar a plaintiff from suing the State for a determination of his rights under the law. *Tex. Mun. Power Agency*, 100 S.W.3d at 515; *Moore*, 985 S.W.2d at 154; *City of Austin*, 728 S.W.2d at 911. The Supreme Court in *Heinrich* held to the contrary, stating that such claims are barred by immunity and must be brought against the individual in an ultra vires suit, not the entity. 284 S.W.3d at 371-72. The Court should not, therefore, give weight to the immunity discussions in those earlier cases.

Instead, the Court should look to the Texas Supreme Court's decision in *Heinrich*, which explains why the UDJA does not waive immunity in this case. *Id.* at 373 n.6. As described by the Court, the UDJA waives the government's sovereign immunity only for challenges to the validity of a statute or ordinance. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 37.006). There, the plaintiff was not challenging the validity of a statute or ordinance, but rather the actions of a board under an ordinance. *Id.* Therefore, the UDJA did not waive sovereign immunity. *Id.*

The same is true here. Plaintiffs are not challenging the validity of any statute. Instead, they challenge the Commissioner's actions under a statutory scheme. This does not fall within the waiver of immunity, as defined by the Texas Supreme Court.[8]

Absent a challenge to the validity of a statute, the UDJA "does not enlarge the trial court's jurisdiction but is merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam). Because Plaintiffs have not challenged the validity of a

---

[8] To the extent Plaintiffs have pleaded a valid rule challenge, the UDJA claim should be dismissed under the redundant-remedies doctrine. *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 705 (Tex. App.—Austin 2011, no pet.).

statute, the UDJA does not provide jurisdiction, and Plaintiffs have identified no other potential waiver of immunity. The Court should, therefore, dismiss Plaintiffs' claims as barred by sovereign immunity.

## V. Plaintiffs Have Not Demonstrated Their Entitlement to the Temporary Injunction.

A.   Plaintiffs are not entitled to a temporary injunction. All of the above arguments demonstrate why Plaintiffs have not shown a (1) cause of action against Defendants; (2) a probable right to the relief sought; or (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

Plaintiffs have not shown a cause of action against Defendants because their claims are moot and unripe, and Plaintiffs lack standing to complain about Defendants' treatment of other school districts. *See supra* pp. 1-12. Moreover, their claims are also barred by sovereign immunity. *See supra* pp. 12-21.

Plaintiffs have also not demonstrated a probable right to the relief sought. The Commissioner correctly interpreted the law, which distinguishes between calculations under Chapter 41 and Chapter 42. *See supra* pp. 16-19. To the extent that TEA was required to follow the rule-making procedures in Chapter 2001, it has now done so. *See supra* pp. 3-4. Plaintiffs do not have a right to demand that the Commissioner collect millions of dollars in recapture from other school districts simply because there is a small chance that doing so might someday impact Plaintiffs.

Finally, Plaintiffs have not shown an imminent and irreparable injury. Indeed, the fact that the 2016-2017 year ended without an FSP deficit and no proration

21

demonstrates that Plaintiffs were not about to suffer an irreparable injury. There is no evidence regarding whether FSP funding will come up short in future years and, therefore, no evidence of future injury.

B.   The temporary injunction entered by the trial court did not maintain the status quo as a factual matter. Appellees Br. 30-31. The injunction did not require Defendants to provide any funding to Plaintiffs—it required only that Defendants recapture additional funding from non-party districts. CR.228-29. For those districts, the "last, actual, peaceable, non-contested status" was using the LOHE-reduced property values. Indeed, the Commissioner had collected over half of the recapture due in 2016-2017 using those amounts at the time of the hearing. 2.RR.171. For those districts (the Chapter 41 districts with LOHEs), the temporary injunction would upend their settled expectations, whereas Plaintiffs would receive no additional funding. Thus, even if there is jurisdiction over this lawsuit, Plaintiffs have not shown their entitlement to a temporary injunction, and the trial court's order should be reversed.[9]

---

[9] The trial court's order remanding the proposed rule is moot, as TEA withdrew that proposed rule. 42 Tex. Reg. at 4271. Therefore, that portion of the injunction should be vacated.

## Prayer

The Court should reverse the rulings of the district court and dismiss the case for lack of subject-matter jurisdiction. Alternatively, the Court should reverse the district court's grant of a temporary injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Scott A. Keller
Solicitor General

/s/ Beth Klusmann
Beth Klusmann
Assistant Solicitor General
State Bar No. 24036918
beth.klusmann@oag.texas.gov

Counsel for Appellants

## CERTIFICATE OF SERVICE

On December 14, 2017, this document was served electronically on Richard E. Gray III, lead counsel for Appellees, via rick.gray@graybecker.com.

/s/ Beth Klusmann
BETH KLUSMANN

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 6012 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Beth Klusmann
BETH KLUSMANN